UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| INSIGNIA SYSTEMS, INC.,<br><br>      Plaintiff,<br><br>  v.<br><br>THE KROGER CO.,<br><br>      Defendant. | Civil Action No.: 20-mc-713<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL NON-PARTY THE KROGER CO.**<br><br>[PUBLIC-REDACTED]<br><br>**Underlying Litigation:**<br><br>*Insignia Systems, Inc. v. News Corporation, News America Marketing FSI L.L.C., and News America Marketing In-Store Services L.L.C.*, No. 19-cv-01820-MJD-BRT (D. Minn.). |

1

I.      **INTRODUCTION**

Plaintiff Insignia Systems, Inc. ("Insignia") served The Kroger Co. ("Kroger") with a validly issued Rule 45 Subpoena, seeking documents relevant to Insignia's claims for antitrust violations, tortious interference, and other unlawful conduct asserted against News America Marketing In-Store Services L.L.C. and related entities ("NAM"). Ex. A (Subpoena); Ex. B (Complaint).

Documents in Kroger's possession are centrally relevant to Insignia's litigation against NAM. Insignia and NAM are third-party providers of in-store promotional products and services ("ISPs") sold to consumer-packaged-goods companies ("CPGs") for placement in retail grocery stores, drugstores, and dollar stores. Insignia alleges that NAM consolidated and maintained its monopoly in the nationwide market for third-party ISPs through its exclusive dealing with retailers, Kroger being one of the chief among them. *See generally* Ex. B (Complaint) ¶¶ 30-44. Insignia also alleges that in at least 2018 and 2019, News tortiously interfered with Insignia's business relationship with Kroger. *Id.* at ¶¶ 39, 50. Insignia's subpoena is tailored to seek documents concerning these issues—*i.e.*, Kroger's evaluation and placement of third-party ISPs in its stores and, specifically, Kroger's dealings with NAM and Insignia concerning third-party ISPs in 2018-2019.

Although the subpoena was issued over nine months ago, and despite repeated efforts by Insignia to make the subpoena as minimally burdensome to Kroger as possible, Kroger has not yet produced a single responsive document. Pursuant to Fed. R. Civ. P. 45(d)(2)(B)(i), Insignia respectfully requests that this Court compel Kroger to comply with Requests 1-5 of Insignia's subpoena.

## II.     BACKGROUND

### A. Insignia's Subpoena to Kroger

Insignia served Kroger with a validly issued Rule 45 subpoena on March 2, 2020. Ex. A (Subpoena). On March 9, 2020, Kroger served general objections to the subpoena, not objections specific to any particular document request. Ex. C (Objections).[1]

This motion concerns the five documents requests specifically tailored to issues regarding Kroger's business relationship with NAM, its evaluation and decisionmaking processes with respect to the placement of third-party ISPs, and NAM's interference with Insignia's business relationship with Kroger in 2018 and 2019. Those requests read:

1.  All Documents and Communications concerning Your evaluation of the ISP work done by Defendants in Your stores.

2.  All Documents and Communications concerning Your decision to contact Insignia through Insignia's website in or around March 2018.

3.  All Documents and Communications concerning any potential Agreement that You contemplated signing with Insignia. This Request includes but is not limited to all internal Documents and Communications concerning or referring to calls, meetings, and store walk-throughs that You conducted with Insignia from March 2018 to the present.

4.  All Documents and Communications concerning Your evaluation of Insignia's outreach to You regarding potential ISP opportunities for 2019 and beyond.

5.  All Documents and Communications concerning any potential Agreement that You contemplated signing with Defendants for the placement of ISPs in Your stores in 2019 and beyond.

Ex. A (Subpoena).

Insignia does not move to compel the subpoena's sixth document request, which sought documents Kroger had produced in prior litigations concerning NAM's anticompetitive conduct.

---

[1] Kroger also did not object to Insignia's specification of this District as the place of compliance—and, thus, the proper District for enforcement of the subpoena. Fed. R. Civ. P. 45(d)(2)(B)(i). In any event, Kroger "regularly transacts business in person" in this District, Fed. R. Civ. P. 45(c)(1), including through its ISP marketing arm, 84.51°, which maintains an office at 104 West 40th Street, 5th floor, New York, NY 10018. *See* 84.51°, Contact Us, available at https://www.8451.com/contact.

3

In May 2020, NAM obtained a protective order against that sixth request in the District of Minnesota on the basis that it constituted duplicative "clone" discovery. NAM did not object to any of the other requests in the subpoena. In granting NAM's request, the Court cited the other document requests in the subpoena – those that Insignia now seeks to enforce – as the more appropriate for Insignia to pursue. Ex. D (Order) at 11 ("This Order . . . does not bar Plaintiff from seeking documents responsive to the other document requests in the third party's possession and control. Nor does it bar the responding third parties from working with Plaintiff to identify responsive documents—including documents produced in past litigations—that would satisfy Plaintiff's remaining requests.").

   B. <u>Negotiations Regarding the Subpoena</u>

Insignia has made every effort to make compliance with the subpoena as minimally burdensome as possible to Kroger. While the meet and confer history is long, the basic facts are these: When Insignia first proposed custodians and search terms to guide Kroger's search for responsive documents, Kroger's counsel informed Insignia in May 2020 that those search parameters would pull in about 193,000 documents, which Kroger believed to be unduly burdensome. Ex. F (N. Lampley 5/26/2020 4:43pm email). In response to assertions of burden by Kroger over the coming months, Insignia narrowed its proposed search parameters several times, repeatedly indicated its willingness to work with Kroger to limit the universe of documents, and sought guidance from Kroger about how to locate responsive documents while imposing minimal burden on Kroger. *See generally* Exs. E-F (Meet and Confer History).

On November 23, 2020, Insignia made its "best and final" proposal to Kroger regarding search parameters. Ex. E (M. Musico 11/23/2020 6:47pm email). By that point, Insignia had narrowed its search parameters to pull in less than 15,000 documents—a 92% reduction from the

original 193,000 document hits. Insignia also offered, as a show of good faith, to reimburse Kroger for up to $15,000 in costs associated with the production of documents not otherwise being reimbursed by NAM. Insignia requested a response by November 30. To date, Insignia has received no response from Kroger. After months of trying to accommodate Kroger's objections to the subpoena, Insignia had no choice but to seek relief from this Court.

### III. LEGAL STANDARD

The scope of permissible discovery is broad. Subpoenas issued under Rule 45 are subject to the relevance standards of Rule 26(b)(1). *Malibu Media, LLC v. Doe*, 2016 WL 5478433, at *2 (S.D.N.Y. Sept. 29, 2016). Rule 26 allows a party to discover any nonprivileged material that is relevant to any party's claim or defense and proportional to the needs of the case, even if that evidence would not be admissible in court. Fed. R. Civ. P. 26(b)(1). Rule 45 permits discovery from non-parties, and the "serving party may move the court for the district where compliance is required for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i). "Once relevance is established, the burden shifts to the party moving to quash to show the subpoena 'is overbroad, duplicative, or unduly burdensome.'" *SEC v. Archer*, 2018 WL 3424449, at *1 (S.D.N.Y. July 2, 2018) (citation omitted).

### IV. ARGUMENTS AND AUTHORITIES

A. The Documents Sought Are Indisputably Relevant

Kroger has never seriously contended that the documents sought by Insignia are not relevant to its case against NAM. Indeed, Kroger waived any such argument by lodging only general objections to the subpoena. *See, e.g.*, *Harcum v. Leblanc*, 268 F.R.D. 207, 209 (E.D. Pa. 2010) (for each Rule 34 document request, responding party must "either produce the requested documents or state a **specific objection** for **each item or category** objected to" (emphasis added)).

5

In any event, there can be little dispute that the information sought in Insignia's subpoena to Kroger is highly relevant to the claims in this case: Insignia has alleged that contract negotiations between Insignia and Kroger were in the final stages before News intervened and ultimately took the business from Insignia. Ex. B (Complaint) ¶¶ 39, 50. Requests 1-5 of Insignia's subpoena are focused on obtaining documents relating to those specific key events.

Additionally, documents and information in Kroger's possession are probative of Insignia's allegations that NAM has consolidated and maintained its monopoly power over the third-party ISP market for the past two decades. Insignia alleges NAM has done so by, for example, entering into contracts with exclusivity and other anticompetitive provisions with retailers, including Kroger, and by threatening breach-of-contract litigation and other retaliation against third parties wishing to do business with NAM's competitors, including Kroger. Ex. B (Complaint) ¶¶ 30-44. Kroger's documents and communications concerning third-party ISPs, its business arrangements and opportunities with NAM and Insignia with respect to such ISPs, and its evaluation of and decisionmaking processes with respect to the placement of such ISPs are centrally relevant to Insignia's case against NAM.[2]

---

[2] Insignia anticipates that Kroger, in opposition, may suggest that information in its possession is duplicative of information Insignia may obtain from NAM. Any such objection, however, is waived given that Kroger did not assert it in its formal response to the subpoena or even in the course of the parties' meet and confers. In any event, the law is clear that any extent to which responsive documents that may be produced by Kroger overlap with productions made by NAM are no excuse for non-compliance with the subpoena. *See Amphenol Corp. v. Fractus, S.A.*, 2019 WL 2521300, at *11 (S.D.N.Y. June 19, 2019) ("[T]hat Fractus may be able to seek discovery (some likely overlapping) on these subjects from the Carrier Defendants does not preclude Fractus from seeking such discovery from Amphenol."); *Certain Underwriters at Lloyd's v. Nat'l R.R. Passenger Corp.*, 2016 WL 6902140, at *4 (E.D.N.Y. Nov. 23, 2016) (holding that subpoenaed third-party "should not be excused from responding to the subpoena on the ground that [the issuing party] already has the documents sought" in productions from parties to the underlying litigation); *Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP*, 2008 WL 4452134, at *5 (S.D.N.Y. Oct. 2, 2008) ("While [the subpoenaed party's] files for this period may not contain anything that is not already in [the requesting party's] files, this fact alone is an insufficient ground on which to quash the subpoena.").

Other lawsuits against NAM regarding its anticompetitive conduct have not only corroborated Insignia's substantive allegations, but also confirmed the central relevance of retailers like Kroger. In fact, a suit by a competitor who was forced out of the third-party ISP market by NAM as a result of anticompetitive conduct substantially similar to that alleged by Insignia, remains pending in this District and will be set for trial shortly. *See Valassis Commc'ns, Inc. v. News Corp.*, No. 17-cv-7378 (PKC) (S.D.N.Y.). The Court's order denying NAM's motion for summary judgment in *Valassis* specifically called out Kroger as one of the key players in the relevant market, and cited Kroger's long-term exclusive contracts with NAM as a prime example of NAM's exclusionary tactics. *Valassis*, 2019 WL 802093, at *3 (S.D.N.Y. Feb. 21, 2019) (recognizing the extraordinary durations of NAM's contracts with retailers, including Kroger, and further noting that "News preemptively renewed contracts with . . . Kroger, and others as part of what News called 'Project Preempt,' years before they were set to expire because News '[didn't] want deals to get . . . close to expiration' for fear of losing the contract"); *see also Dial Corp. v. News Corp.*, 165 F. Supp. 3d 25, 30, 33 (S.D.N.Y. 2016) (specifically noting NAM's long-term exclusive contract with Kroger as part of the basis for denying NAM's motion for summary judgment on claims of monopolization and exclusive dealing in the nationwide third-party ISP market).

Kroger should be compelled to produce the indisputably relevant documents in its possession responsive to Requests 1-5 of Insignia's subpoena.

B. <u>Kroger's Assertions of Burden Are Unfounded</u>

Kroger's primary—indeed, arguably only—objection to the subpoena has been the alleged burden and cost of compliance. The objections are unfounded.

As the meet and confer history makes clear, Insignia was open to proposals from Kroger about how it may have located and produced responsive documents with minimal burden. *See* Part II above. Insignia tried its best to accommodate Kroger's assertions of burden through its several-times-narrowed proposals, but Kroger repeatedly objected to Insignia's proposed search parameters while providing no alternative proposal for producing responsive documents.[3] In light of this history, the search parameters proposed by Insignia in its November 23 email, as discussed in Part II above and attached as Ex. E (M. Musico 11/23/2020 6:47pm email), are the most reasonable, appropriate, and minimally burdensome terms by which Kroger should be required to comply with Requests 1-5 in the subpoena.

As for costs, Kroger's objection is again meritless, for at least three reasons. *First*, Kroger's business arrangement with NAM ensures that **Kroger will not bear any costs** in connection with this subpoena. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

---

[3] The only alternative proposal by Kroger's counsel did not involve the provision of any documents. Instead, Kroger suggested the possibility of an affidavit from "a Kroger witness who will aver that no one from any Kroger entity was pressured or threatened to take any action with respect to any ISP issue." Ex. E (N. Lampley 11/09/2020 11:33am email). This "alternative" is not only inadequate but also obviously prejudicial to Insignia. The proposal is inadequate because Kroger's relevance to Insignia's case against NAM is not limited to Insignia's allegations of tortious interference; as indicated above, Kroger's decisionmaking with respect to third-party ISPs more generally remains relevant to Insignia's allegations of the exclusionary effect of NAM's anticompetitive tactics. And the proposal is prejudicial because Insignia cannot reasonably be expected to accept a naked affidavit without underlying documents for purposes of corroboration or impeachment.

*Second*, given Kroger's ongoing business relationship with NAM, Kroger is "not a classic disinterested non-party"—a factor that has led courts to deny reimbursement of subpoena costs altogether. *In re Honeywell Int'l, Inc. Secs. Litig.*, 230 F.R.D. 293, 303 (S.D.N.Y. 2003).

*Third*, the meet and confer history again confirms that Insignia has done everything it can to reduce any possible costs to Kroger. Insignia's most recent proposal to Kroger seeks at most 15,000 documents. Kroger has quoted Insignia an unreasonably high cost estimate in the hundreds of thousands of dollars to produce such a small volume of documents. But—even if that cost estimate could be justified (it cannot), and even if Kroger were not being indemnified by NAM (it is)—Kroger, a company with over ten billion in assets and at least hundreds of millions in cash on hand, cannot seriously contend this is an unduly burdensome undertaking.[4] On top of it all, as a show of good faith, Insignia offered to reimburse Kroger an entirely reasonable $15,000 in costs not otherwise reimbursed by NAM.

Kroger's assertions of burden and cost provide no excuse for its total non-compliance with Insignia's duly issued subpoena, particularly when Kroger made no effort to propose an alternative, reasonable means of locating and producing responsive documents. Having failed to do so, Kroger should be compelled to produce responsive documents according to the search parameters that Insignia repeatedly narrowed in order to make compliance with the subpoena as minimally burdensome to Kroger as possible. Ex. E (M. Musico 11/23/2020 6:47pm email).

C. Confidentiality Is Not A Concern

Kroger's objections also cite generic concerns about confidentiality. To the extent Kroger stands by that objection as a basis for non-compliance with the subpoena, it is meritless. Confidentiality is no reason to withhold responsive documents, particularly where, as here, there

---

[4] *See generally* Market Watch, Kroger Co. 2016-2020 Balance Sheet, available at https://www.marketwatch.com/investing/stock/kr/financials/balance-sheet.

is a robust Protective Order in place in the underlying litigation that provides Kroger the opportunity to make confidentiality designations. *See Christine Asia Co. v. Alibaba Grp. Holding Ltd.*, 327 F.R.D. 52, 55 (S.D.N.Y. 2018) (holding "the Stipulation and Protective Order . . . addresses any concerns that Defendants may have regarding the confidential or sensitive nature of the information redacted from documents"); *Lobato v. Ford*, No. 05-cv-01437-LTB-CBS, 2007 WL 3342598, at *4-5 (D. Colo. Nov. 9, 2007) (holding confidential documents not exempt from production pursuant to Rule 45 subpoenas in light of Protective Order in place in underlying litigation). The Protective Order entered in the underlying litigation in the District of Minnesota was included with Insignia's subpoena to Kroger, Ex. A, and Insignia's counsel specifically called Kroger's attention to the Protective Order, including its provision for potential Attorneys' Eyes Only designations, Ex. Ex. E (M. Musico 11/23/2020 6:47pm email).

### V.     CONCLUSION

For the foregoing reasons, Insignia respectfully requests that this Court compel Kroger to comply with Requests 1 through 5 set forth in Attachment A to Insignia's subpoena.

Dated: December 7, 2020                                   Respectfully submitted,

/s/ Mark Musico
SUSMAN GODFREY LLP
William Christopher Carmody
New York State Bar No. 4539276
bcarmody@susmangodfrey.com
Arun Subramanian
New York State Bar No. 4611869
asubramanian@susmangodfrey.com
Mark Musico
New York State Bar No. 5238001
mmusico@susmangodfrey.com
Y. Gloria Park
New York State Bar No. 5477047
gpark@susmangodfrey.com

1301 Avenue of the Americas, 32nd Floor
New York, New York 10019
Telephone: (212) 336-3330
Fax: (212) 336-8340

Alejandra C. Salinas
Texas State Bar No. 24102452
asalinas@susmangodfrey.com
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Fax: (713) 654-6666

Rachel S. Black
Washington State Bar No. 32204
rblack@susmangodfrey.com
1201 Third Avenue, Suite 3800
Seattle, WA 98101
Telephone: (206) 516-3880
Fax: (206) 516-3883

NAPOLI SHKOLNIK PLLC
Hunter Shkolnik
New York State Bar No. 2031458
hunter@napolilaw.com
360 Lexington Avenue, 11th Floor
New York, New York 10017
Telephone: (212) 397-1000

BLACKWELL BURKE P.A.
Jerry W. Blackwell
Minnesota State Bar No. 186867
blackwell@blackwellburke.com
S. Jamal Faleel
Minnesota State Bar No. 320626
jfaleel@blackwellburke.com
431 South Seventh Street, Suite 2500
Minneapolis, MN 55415
Telephone: (212) 343-3200
Fax: (212) 343-3205

*Attorneys for Plaintiff Insignia Systems, Inc.*